IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MANUEL E. ABRANTE, III. <br>     Plaintiff, <br>       v. <br><br> VINCENT GUARINI, et al., <br>     Defendants. | CIVIL ACTION <br><br> NO.  12-6860 |
|---|---|

**MEMORANDUM RE DEFENDANTS' MOTION TO DISMISS**

Baylson, J.                                                                                          November 6, 2014

**I.    Introduction**

Plaintiff Manuel E. Abrante III is an inmate at Lancaster County Prison (the "Prison"). Abrante amended his complaint in this 42 U.S.C. § 1983 action on June 18, 2014. Abrante alleges in his Amended Complaint that prison officials Vincent Guarini, Joe Shiffler, and Ann Haines, as well as nurse practitioner Lori Hostetter, provided inadequate medical treatment for injuries he sustained after sustaining gunshot wounds, and were deliberately indifferent to his serious medical needs in violation of his Fourteenth and Eighth Amendment rights. Guarini, Shiffler, and Haines (collectively, "Defendants") have moved to dismiss Abrante's Amended Complaint for failure to state a claim. For the following reasons, the Motion is DENIED.

**II.    Facts[1] and Procedural History**

On August 1, 2011, Abrante was shot twice in the buttocks. ECF 31-1 ¶¶ 9–10. He was taken to Lancaster General Hospital ("Lancaster General"), where he was

---

    1 The factual allegations in the Amended Complaint are presumed true for the purpose of evaluating Defendants' Motion to Dismiss. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

1

diagnosed with a fractured pelvis, trauma to his right femur, and other tissue damage. *Id.* ¶¶ 11–13. Physicians at Lancaster General prescribed pain medications to Abrante, including fentanyl and morphine; provided him with a rolling walker; and administered physical and occupational therapy until he was released four days later on August 5, 2011. *Id.* ¶¶ 15–20.

Upon discharge, Abrante's physicians provided him with instructions including:

- A prescription for oxycodone, a narcotic painkiller;
- A prescription for blood thinners to prevent blood clots;
- Physical and occupational therapy; and
- Assistance with dressing and bathing.

*Id.* ¶¶ 21–24. The instructions also noted that Abrante could not walk without crutches, which Lancaster General provided to Abrante upon discharge. *Id.* ¶ 26. The instructions were given to a Lancaster Police Department officer who transported Abrante to the Prison, and who gave the instructions to the Prison employee conducting Abrante's intake. *Id.* ¶ 29.

In addition to the written discharge instructions, Abrante's physician told Abrante that physical therapy was necessary for his injuries to heal properly and that the Prison would provide such therapy. *Id.* ¶ 25. Abrante's physician further informed him that he need to be housed in the Prison's Medical Housing Unit ("MHU") to receive appropriate care. *Id.* ¶ 27.

When he arrived at the Prison, Abrante required a wheelchair during intake and was "writhing in pain." *Id.* ¶¶ 30–33. A Prison employee also documented his medical condition during an intake interview. *Id.* ¶ 32. Nevertheless, the Prison assigned Abrante

2

to a "Classification Block" that temporarily houses inmates until they receive a permanent housing assignment. *Id.* ¶¶ 34–35. Abrante remained in Classification Block housing for almost one month. *Id.* ¶ 37.

Abrante alleges that Classification Block housing was unsuitable for someone in his condition in several ways. Inmates in the classification block were confined to their cells for all but 30 minutes each day, but Abrante needed room to ambulate in order to recover from his injuries. *Id.* ¶¶ 38–39, 41. The Classification Block showers also were not equipped with grab bars, and were only accessible during the 30 minutes each day Abrante was allowed out of his cell. *Id.* ¶¶ 43–44. Abrante needed to bathe frequently in order to avoid infection, but fell several times while attempting to use the Classification Block showers, which aggravated his injuries. *Id.* ¶¶ 44–45. Because of his difficulty using the showers in the unit, Abrante resorted to bathing himself using his property bin as a bucket and a soiled sock as a washcloth. *Id.* ¶ 44.

Abrante alleges that in the MHU, he would have had access to physical and occupational therapy, additional time for bathing, assistance with bathing, showers with mounted grab bars, sufficient opportunity to ambulate, and more frequent medical examinations. *Id.* ¶ 46. Although he requested to be moved to the MHU, Prison staff could not direct him to the person responsible for this decision: Defendant Haines told Abrante that Prison medical staff made MHU placements, whereas Hostetter had told Abrante that this was the responsibility of Prison administrators. *Id.* ¶ 52. Abrante never received MHU housing and was eventually transferred to a general population block. *Id.* ¶¶ 59–60.

In addition to placing Abrante in Classification Block and, later, general population housing, the Prison allegedly denied him other medical care that doctors at Lancaster General had prescribed. *Id.* ¶ 65. Specifically, Abrante claims that Hostetter refused to provide him with physical and occupational therapy or other opportunities to ambulate, pain medication, or medication for muscle spasms.[2]  *Id.*  Furthermore, Lancaster General had been unable to remove the bullets from Abrante's legs at the time he was shot. *Id.* ¶ 14. In December 2012, a bullet dislodged itself from Abrante's leg over the course of several days, during which Abrante experienced severe pain and swelling. *Id.* ¶ 76. Despite his requests for medical treatment, Abrante did not receive any care for "multiple" days. *Id.* ¶¶ 77–78.

Defendants Guarini, Shiffler, and Haines served, respectively, as the Warden, Deputy Warden, and Classification Coordinator at the Prison. *Id.* ¶¶ 2–4. Abrante alleges that he "complained specifically" to Defendants "about the conditions of his confinement" in Classification Block and "the inadequacy of his medical care," and how lack of care "aggravated his physical pain and injuries." *Id.* ¶¶ 47, 70. Abrante also claims he submitted multiple general request forms[3] to Defendants about both his housing placement and the inadequacy of his medical care. *Id.* ¶¶ 51, 70. Defendants ignored Abrante's complaints, rejected them "without any explanation," or inaccurately responded that Abrante had refused treatment. *Id.* ¶¶ 53, 71, 73–74. He also alleges that Guarini, Shiffler, and Haines discarded many of his complaint forms. *Id.* ¶¶ 71–72.

---

[2] Abrante makes a number of allegations specific to Hostetter. Because Hostetter has answered the Amended Complaint rather than moved to dismiss, the Court will only set forth those allegations relating to Hostetter that are relevant to Guarini, Shiffler, and Haines's motion.

[3] According to the Amended Complaint, a "general request form" was "the only official method by which inmates . . . could communicate grievances and requests" to Prison officials. *Id.* ¶ 50.

Abrante alleges that he now permanently suffers from "arthritis, chronic pain, nerve damage, limited mobility, and a . . . limp" as a result of the inadequate care he received at the Prison. *Id.* ¶ 42. He also claims that the Defendants unnecessarily subjected him to "aggravated" and "intense" pain and suffering. *Id.* ¶¶ 45, 54, 62, 79.

Abrante filed a *pro se* complaint on October 1, 2013. ECF 5. Hostetter and Bonnie Bair,[4] a mental health clinician at the Prison, and Guarini, Shiffler, and Haines filed separate motions to dismiss. ECF 13, 17. The Court denied Hostetter and Bair's motion, and stayed proceedings pending appointment of counsel for Abrante. ECF 18, 19, 25. Abrante, now represented by counsel, amended his complaint on June 18, 2014. ECF 31.

## III.   The Parties' Contentions

Defendants argue that Abrante's claims should be dismissed because they are nonmedical personnel whom Abrante has not alleged were specifically involved in medical treatment decisions or housing assignments. ECF 33, at 3–4. They further argue that Abrante's allegations only amount "disagreements with the medical plan set forth by the staff" that fall short of a constitutional violation, and that Abrante cannot sustain a § 1983 claim under a supervisory liability theory. *Id.* at 6. Additionally, Defendants contend that they are entitled to qualified immunity and that Abrante has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA").[5] *Id.* at 7–9.

---

[4] Abrante is no longer pursuing claims against Bair in his Amended Complaint.
[5] Defendants also argue that the Court should dismiss Abrante's case because it is "frivolous, malicious, fails to state a claim . . . or seeks monetary relief from a defendant who is immune from such relief" under the PLRA. *Id.* at 9 (citing 42 U.S.C. § 1997e(c)(1)). As discussed below, Abrante has

Abrante counters that he has sufficiently alleged personal involvement by the moving Defendants because he informed each one of the inadequacy of his housing and medical care, and they ignored or denied his requests. ECF 37 at 10–13. Abrante also argues that Defendants are not entitled to qualified immunity because they violated his clearly established rights. *Id.* at 13–14. Finally, Abrante contends that the Second Amended Complaint sufficiently alleges that he exhausted available administrative remedies. *Id.* at 14–15.

## IV. Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). To survive a 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 234. When a complaint contains well pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (reaffirming rationale set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal quotation marks omitted) (citations omitted).

---

sufficiently stated a claim for relief in the Amended Complaint, and Defendants have not demonstrated that they are entitled to qualified immunity at this stage.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

## V.     Analysis

### A.     Failure to Provide Medical Treatment

Abrante alleges a denial of medical treatment while he was a pretrial detainee at the Prison. The government has an obligation to provide medical care to those it incarcerates. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Because "it would be anomalous to afford a pretrial detainee less constitutional protection than one who has been convicted," pretrial detainees may establish a constitutional violation if their claims meet the "deliberate indifference" standard used to analyze Eighth Amendment claims of convicted prisoners. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1079–80 (3d Cir. 1976)).[6]

A successful medical mistreatment claim alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. A medical need is serious if it is "diagnosed by a physician as requiring treatment," "so obvious that a lay person would easily recognize the necessity for a doctor's attention," causes "extreme pain and real possibility of permanent injury," or if

---

[6] The Fourteenth Amendment protects pretrial detainees from actions by prison officials amounting to punishment "prior to an adjudication of guilt" *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Because Abrante has successfully alleged deliberate indifference to a serious medical need, the Court need not decide what additional rights he possessed as a pretrial detainee. Defendants argue that Abrante was required to allege that they had an "intent to punish" to show a violation of his Fourteenth Amendment rights, but this is not so where a plaintiff can meet the deliberate indifference standard. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) ("In previous cases, we have found no reason to apply a different standard than that set forth in *Estelle* (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment.").

"denial or delay [of treatment] causes an inmate to suffer a life-long handicap or permanent loss." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Defendants have not disputed that Abrante's medical needs were serious after recently sustaining two gunshot wounds.[7]  *Cf. Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987) (explaining that expert testimony is not required to establish the seriousness of a gunshot wound).

Failure to provide medical treatment is only unconstitutional, however, if prison officials exhibit deliberate indifference to an inmate's needs.  A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety."  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir.2003).  Medical malpractice claims alone do not rise to the level of constitutional violations and, generally, medical officials working at prisons are given great latitude in choosing courses of treatment.  *Spruill*, 372 F.3d at 236.  Nevertheless, deliberate indifference may be demonstrated where, for example, prison officials expose inmates to "undue suffering or the threat of tangible residual injury" following a denial of reasonable medical requests, intentionally refuse to provide necessary care, delay care for nonmedical reasons or institute "erect arbitrary and burdensome procedures" for receipt of care, or substitute treatment recommended by a physician with "easier and less efficacious" methods.  *Lanzaro*, 834 F.2d at 346–47.

Defendants argue that they are nonmedical personnel who were not personally involved in any denial of treatment to Abrante, and who cannot be liable under a

---

[7] The amended complaint alleges that the Plaintiff was diagnosed with a fractured pelvis, right femur trauma, and tissue damage.  FAC ¶ 13.

supervisory liability theory. Prison officials in nonmedical roles are "generally justified in believing that the prisoner is in capable hands" if an inmate is "under the care of medical experts." *Spruill*, 372 F.3d at 236. Nonmedical staff therefore cannot be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Nevertheless, nonmedical prison personnel also cannot fail to take steps to prevent harm if they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236.

Taking Abrante's allegations as true, Abrante has sufficiently alleged in his Amended Complaint that Defendants had "reason to believe (or actual knowledge) that prison doctors or their assistants [were] mistreating (or not treating)" him. *Id.* Abrante claims that he "complained specifically" to Defendants about the conditions of his confinement and the inadequacy of the care medical staff were providing. ECF 31-1 ¶¶ 47, 70. Abrante further alleges that Defendants received and read the multiple general request forms he submitted on these issues, but ignored or discarded them, rejected them without explanation, or inaccurately responded that Abrante had refused treatment. *Id.* ¶¶ 51, 53, 71–74. Finally, Abrante has described how both medical and non-medical staff at the Prison disclaimed responsibility for deciding whether Abrante would be placed in the MHU. *Id.* ¶ 53.

Defendants also assert that the Amended Complaint "sets forth instances where [Abrante] received medical treatment," and that Abrante has merely alleged "personal disagreements with the medical plan set forth by [Prison] staff." ECF 33, at 6. The

9

Amended Complaint does allege that Abrante had access to crutches, medication, albeit not that prescribed by Abrante's physician at Lancaster General, and evaluations by Defendant Hostetter, a nurse practitioner. ECF 31-1 ¶¶ 52, 54, 56. "[D]raw[ing] all inferences from the facts alleged in the light most favorable to" Abrante, however, the Court cannot conclude that prison medical staff's significant deviations from the treatment plan recommended by physicians at Lancaster General were based on an exercise of medical judgment. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Glenn v. Barua*, 252 F. App'x 493, 498 (3d Cir. 2007) ("While discovery may reveal that Diddle properly exercised medical judgment in withholding the requested treatment, such a conclusion is not supported by the facts set forth in the complaint."). This is particular so in light of Abrante's allegations that the staff member primarily responsible for his care, Defendant Hostetter, did not provide "proper treatment . . . due to personal animosity" and made derisive comments about him and his condition. ECF 31-1 ¶¶ 64, 67–69.

Because Abrante has sufficiently alleged that Defendants violated his Fourteenth Amendment rights to medical treatment while incarcerated as a pretrial detainee, the Court will consider whether Defendants are entitled to qualified immunity.

B.  **Qualified Immunity**

"There are two related but distinct inquiries in a qualified immunity case. One is whether the defendant's conduct violated the plaintiff's civil rights; the other is whether the right in question was clearly established at the time of the violation."[8] *Schneyder v.*

---

[8] Abrante contends that the Third Circuit has established a *per se* rule denying qualified immunity to officials where a civil rights plaintiff has established that they acted with deliberate indifference. ECF

*Smith*, 653 F.3d 313, 318 (3d Cir. 2011). Having already decided that Abrante has sufficiently alleged that the moving Defendants' conduct violated his civil rights, the Court need only consider whether these rights were clearly established at the time.

A right is clearly established where "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, — U.S. —, — (2011). There need not be case law addressing the particular circumstances with which an official is confronted, but at the same time, courts should not consider rights at a "high level of generality." *Id.* at 2083–84. The ultimate question is whether "[e]xisting precedent . . . placed the statutory or constitutional question beyond debate." *Id.* at 2083.

The Court concludes that the Amended Complaint alleges violations of Abrante's clearly established rights.[9] The Third Circuit has found constitutional violations where,

---

37, at 14 (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001); *Carter v. City of Phila.*, 181 F.3d 339, 356 (3d Cir. 1999)). In *Beers*, the Third Circuit explained that deliberate indifference precludes qualified immunity because "a reasonable [defendant] could not believe that her actions comported with clearly established law while also believing that there is an excessive risk to the plaintiffs and failing to adequately respond to that risk." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001). In *Saucier v. Katz*, however, the Supreme Court rejected the similar argument that "it would be inconsistent to conclude that an officer who acted unreasonably under the constitutional standard nevertheless was entitled to immunity because he 'reasonably acted unreasonably,'" and held that qualified immunity and excessive force require separate reasonableness inquiries. *Saucier v. Katz*, 533 U.S. 194, 202–03 (2001) (internal quotation marks omitted), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The Third Circuit has not opined on whether *Saucier* abrogated *Beers-Capitol* and *Carter*. *Compare Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 325–29 (3d Cir. 2014) (applying two-part test to decide qualified immunity where plaintiff alleged failure to provide medical treatment) *with Meyers v. Majkic*, 189 F. App'x 142, 144 (3d Cir. 2006) (citing *Carter*, 181 F.3d at 356) (applying *per se* rule to deny summary judgment on the issue of qualified immunity where plaintiff established genuine issue of material fact as to deliberate indifference). Nevertheless, the Court need not determine whether *Beers-Capitol* and *Carter* are still good law because Abrante has sufficiently alleged a violation of clearly established rights. *See Schneyder*, 653 F.3d at 318.

[9] Abrante submits that his "right to protection from a prison official's deliberate indifference to . . . serious medical needs" has been clearly established since the Supreme Court decided *Estelle v. Gamble* in 1976. ECF 37, at 13 (citing *Consonery v. Pelzer*, 558 F. App'x 271, 275 (3d Cir. 2014)). As the Supreme Court has explained, "[t]he general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 131 S. Ct. at 2084. Abrante's conception of the right at

as here, prisons have ignored inmates' requests for rehabilitative physical therapy recommended by a pre-incarceration physician, *see Durmer v. O'Carroll*, 991 F.2d 64, 66–68, as well as inmates' complaints that pain medication is insufficient to treat debilitating pain, *see Spruill v. Gillis*, 372 F.3d 218, 225, 236–38 (3d Cir. 2004). Furthermore, Third Circuit precedent has given "'fair warning' that nonmedical prison officials" like Defendants "may 'be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference' when they possess actual knowledge or have reason to believe that prison medical staff are mistreating or failing to treat inmates' serious medical conditions." *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 329 (3d Cir. 2014) (citations omitted) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004)).

As for Abrante's allegations regarding the adequacy of the Prison's showers, the Third Circuit has not issued a precedential opinion on whether prisons must provide accessible bathroom facilities to inmates with disabilities. The Third Circuit has held in an unpublished opinion that an inmate was not entitled under "clearly settled case law" to a shower chair specifically designed for T-5 paraplegia where prison showers were already otherwise equipped with grab bars and a shower seat. *Foreman v. Bureau of Prisons*, No. 06-1274, 2007 WL 108457, at *5 (3d Cir. Jan. 16, 2007) (Baylson, J.). The *Foreman* court, however, distinguished between cases finding no constitutional violation for delays in providing accommodations or where inmates with disabilities were able to use bathroom facilities with difficulty, and cases finding constitutional violations where the total inaccessibility of prison showers resulted in "significantly worse conditions" for

---

issue is therefore too broad.  Defendants, however, have not countered with a narrower definition of the rights at stake.

12

inmates with disabilities. *Id.* at 4 (citing *Bradley v. Puckett*, 157 F.3d 1022, 1025–26 (5th Cir. 1998); *Schmidt v. Odell*, 64 F.Supp.2d 1014, 1031 (D.Kan.1999)).

This does not end the Court's inquiry, however; due to the lack of precedential Third Circuit cases, decisions of other Courts of Appeals are also relevant to whether Abrante's rights were clearly established. *Williams*, 455 F.3d at 192–93 ("We routinely consider decisions by other Courts of Appeals as part of our 'clearly established' analysis when we have not yet addressed the right asserted."). The Fourth, Fifth, Eighth, and Ninth Circuits have all held that inmates with disabilities must be afforded at least some accommodation if either prison showers or toilets are not accessible.[10] *Bradley v. Puckett*, 157 F.3d 1022, 1025–26 (5th Cir. 1998); *Simmons v. Cook*, 154 F.3d 805, 808 (8th Cir. 1998); *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998); *LaFaut v. Smith*, 834 F.2d 389, 394 (4th Cir. 1987). In *Shockley v. Jones*, the Seventh Circuit upheld dismissal of Eighth Amendment claims where prison officials did not provide a specially designed shower chair to an inmate with paraplegia for approximately one month, but in the meantime provided him with a chair not designed for this purpose. *Shockley v. Jones*, 823 F.3d 1068, 1069, 1072 (7th Cir. 1987). The *Shockley* court, however, did not consider on a general level whether inmates with disabilities are entitled to accommodations where prison bathrooms are inaccessible, and rather affirmed dismissal

---

[10] Courts have characterized the denial of accessible showers or toilets as a failure to attend to medical needs, a denial of "the minimal civilized measure of life's necessities," or both. *E.g.*, *Bradley*, 157 F.3d at 1025–26; *Simmons*, 154 F.3d at 807–08. The distinction is not relevant to the question of whether a reasonable official would believe Abrante had a right to some accommodation under the circumstances alleged in the Amended Complaint. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) ("[T]he medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates. . . . 'Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the "deliberate indifference" standard articulated in Estelle.'" (quoting *LaFaut v. Smith*, 834 F.2d 389, 391–92 (4th Cir. 1987))).

because the plaintiff had not alleged that the defendants' conduct was deliberately indifferent. *See id.* at 1072.

Based on these authorities, the Court concludes that under the circumstances alleged in the Amended Complaint, it would have been "apparent to a reasonable official" that failing to provide Abrante some accommodation that would enable him to bathe was unlawful.[11] *Williams v. Bitner*, 455 F.3d 186, 192-93 (3d Cir. 2006) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211–12 & n. 4 (3d Cir.2001)). Courts have recognized that it violates "contemporary standards of decency" for an inmate with limited mobility to be left without the ability to bathe because prison bathrooms are not accessible. *E.g.*, *Bradley v. Puckett*, 157 F.3d 1022, 1025–26 (5th Cir. 1998). For an inmate with recent, unhealed gunshot wounds like Abrante's, denying the opportunity to bathe additionally poses an obvious risk of infection. *See* ECF 31-1 ¶ 44. Therefore, taking the allegations of the Amended Complaint as true, Defendants are not entitled to qualified immunity at this stage.[12]

### C.  Failure to Exhaust Administrative Remedies

"There is . . . no reason to suppose that the normal pleading rules have to be altered to facilitate judicial screening of complaints specifically for failure to exhaust." *Jones v. Bock*, 549 U.S. 199, 214 (2007). The Supreme Court has therefore held that

---

[11] Whether Defendants were required to provide Abrante access to a shower with grab bars versus merely assist him with bathing need not be decided to determine qualified immunity, as Abrante alleges that Defendants made no attempt at all to accommodate him. *See* ECF 31-1 ¶¶ 44–47.

[12] Defendants point out in support of their qualified immunity argument that Abrante's housing assignment was "objectively reasonable," "based upon his need for crutches," and "provided . . . all his basic human needs." ECF 33, at 8. They further explain that they "ensured that medical treatment was provided to Plaintiff, while reasonably deferring to [Prison] medical professionals." *Id.* These assertions contradict Abrante's allegations in the Amended Complaint, which the Court is bound to accept as true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Defendants, of course, may renew their qualified immunity arguments at the summary judgment stage.

"failure to exhaust is an affirmative defense under the PLRA . . . that inmates are not required to specially plead." *Id.* at 214. Instead, Defendants are required to "plead and prove" this defense. *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013).

Defendants contend that it is clear from the face of the Amended Complaint that Abrante did not follow Pennsylvania's three-level prison grievance procedure when he filed only a "general request form." ECF 38, at 1–3. Abrante, however, has pleaded that "at all relevant times, the only official method by which inmates at Lancaster County Prison could communicate grievances and requests was through a general request form." ECF 31-1 ¶ 50. Abrante further alleges that he submitted multiple general request forms, many of which Defendants ignored or discarded. *Id.* ¶¶ 51, 53, 72–73; *see Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) (citing *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)) (holding that an administrative grievance process that prison officials prevent an inmate from exhausting is not "available" under the PLRA). Taking these allegations as true, the Court cannot conclude at this stage that Abrante failed to exhaust available administrative remedies. Following the Third Circuit's instruction in *Small v. Camden County*, 728 F.3d 265, 271 n.5 (3d Cir. 2013), the Court will order the parties to take discovery initially on the issue of exhaustion of administrative remedies within 90 days, with leave to file a motion for summary judgment limited to that issue at the end of the 90-day period.

## VI. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint is DENIED. An appropriate order follows.